# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JESSICA L. SPEARS,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:07cv00010 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security**,[1] | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

## *I. Background and Standard of Review*

Plaintiff, Jessica L. Spears, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1). I do note that Spears's complaint named Linda S. McMahon, the then-current Acting Commissioner of Social Security as the defendant.

-1-

under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Spears protectively filed her application for SSI on February 18, 2004, alleging disability as of October 15, 2003, based on "nerves," anxiety, depression and panic attacks. (Record, ("R."), at 68-70, 71-74, 75, 79.) Spears's claim was denied both initially and on reconsideration. (R. at 45-47, 51-53, 54.) Spears then requested a hearing before an administrative law judge, ("ALJ"). (R. at 55.) The ALJ held a hearing on December 7, 2005, at which Spears was represented by counsel. (R. at 377-88.) By decision dated January 23, 2006, the ALJ denied Spears's claim.[2] (R. at 33-40.) A request for review was filed, and the Appeals

---

[2] The ALJ found that the medical evidence established that Spears suffered from severe impairments, namely an anxiety disorder with panic attacks and borderline intellectual functioning, but he found that Spears did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 37.) The ALJ also found that Spears had the residual functional capacity to perform simple, unskilled work at all exertional levels that did not require working with the public. (R. at 39.)

-2-

Council remanded Spears's claim for further proceedings. (R. at 22, 56-58.) A second hearing was held on August 8, 2006, at which Spears was represented by counsel. (R. at 389-414.)

By decision dated September 19, 2006, the ALJ denied Spears's claim. (R. at 14-21.) The ALJ found that Spears had not engaged in substantial gainful activity since October 15, 2003. (R. at 20.) The ALJ found that the medical evidence established that Spears had severe impairments, namely borderline intellectual functioning, anxiety and depression, but he found that Spears did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19-20.) The ALJ further found that Spears's allegations regarding her limitations were not totally credible. (R. at 20.) The ALJ found that Spears had the residual functional capacity to perform simple, unskilled work at all exertional levels, but had mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (R. at 20, 259.) The ALJ found that Spears could return to her past relevant work as a cook and a waitress. (R. at 21.) Therefore, the ALJ concluded that Spears was not under a disability as defined in the Act, and that she was not eligible for SSI benefits. (R. at 21.) *See* 20 C.F.R. § 416.920(f) (2007).

After the ALJ issued his opinion, Spears pursued her administrative appeals, (R. at 10), but the Appeals Council denied her request for review. (R. at 6-9.) Spears then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2007). The case is

---

The ALJ also found that Spears had no past relevant work experience. (R. at 39.)

before this court on Spears's motion for summary judgment filed July 17, 2007, and the Commissioner's motion for summary judgment filed August 17, 2007.

*II. Facts*

Spears was born in 1980, (R. at 68), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). She has an eleventh-grade education and past relevant work experience as a cook and a waitress. (R. at 80, 85, 392.)

Thomas E. Schacht,[3] a medical expert, testified at Spears's second hearing. (R. at 397-409.) Schacht stated that with respect to Spears's treatment course, she was "substantially noncompliant," until most recently. (R. at 405.) He stated that the record indicated that once Spears began to engage in treatment, she benefitted significantly. (R. at 405.)

Donna J. Bardsley, a vocational expert, also was present and testified at Spears's hearing. (R. at 410-13.) Bardsley was asked to consider a hypothetical individual of Spears's age, education and work history, who had no exertional limitations and who was limited as indicated by the Psychiatric Review Technique form, ("PRTF"), completed by state agency psychologist Joseph Leizer. (R. at 249-65, 412.) Bardsley stated that the limitations imposed by Leizer would have no impact on the individual's ability to perform gainful employment. (R. at 412.) Bardsley was asked to consider the same hypothetical individual, but who was limited as indicated in the assessment completed by B. Wayne Lanthorn, Ph.D., a licensed clinical

---

[3]The transcript incorrectly refers to the medical expert as Thomas E. Shauck.

-4-

psychologist. (R. at 279-81, 412.) Bardsley stated that there would be no jobs available that such an individual could perform. (R. at 413.)

In rendering his decision, the ALJ reviewed records from Wise County Public Schools; Wellmont Lonesome Pine Hospital; Dr. P. B. Kapadia, M.D.; Frontier Health; Wise County Behavioral Health Services; Stone Mountain Health Services; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Donna Abbott, M.A., a licensed senior psychological examiner; Joseph Leizer, Ph.D., a state agency psychologist; Eugenie Hamilton, Ph.D., a state agency psychologist; E. Hugh Tenison, Ph.D., a state agency psychologist; and Dr. Randall E. Pitone, M.D., a psychiatrist.

The record shows that Spears saw Dr. P. B. Kapadia, M.D., from July 2001 through February 2004 for various complaints such as allergic rhinitis, bronchitis, urinary tract infections, pharyngitis, anxiety and depression. (R. at 190-94.) In January 2002, Spears reported that her anxiety and depression symptoms had improved with medication. (R. at 193.) In February and March 2002, Dr. Kapadia reported that Spears's symptoms of anxiety and depression were stable. (R. at 191-92.)

On March 31, 2004, Spears was seen at Wise County Behavioral Health Services, ("Behavioral Health Services"), for complaints of anxiety and depression. (R. at 201-03.) It was reported that Spears's mood was depressed, and her affect was restricted. (R. at 202.) Her memory was intact, and her thought processes were normal. (R. at 202.) She was diagnosed with dysthymic disorder. (R. at 202.) A Global

Assessment of Functioning, ("GAF"), score of 50 was assessed.[4] (R. at 202.) On September 9, 2004, Spears was seen at Behavioral Health Services for complaints of mood swings. (R. at 197.) She was diagnosed with bipolar II disorder. (R. at 197.) On November 11, 2005, Spears's mood was described as mildly anxious and moderately depressed with congruent affect. (R. at 283.) On June 1, 2005, Spears was diagnosed with major depressive disorder. (R. at 291.) Her then-current GAF score was assessed at 55.[5] (R. at 291.) On February 10, 2006, Spears was diagnosed with panic disorder with agoraphobia, generalized anxiety disorder and major depressive disorder, recurrent, moderate to severe without psychosis or intent to harm herself. (R. at 367-69.) Dr. Randall E. Pitone, M.D., a psychiatrist, estimated Spears's intelligence to be within the normal range. (R. at 307.) He reported that Spears's memory and other cognitive functions were intact. (R. at 307.) Dr. Pitone diagnosed a panic disorder, generalized anxiety disorder and major depressive disorder, recurrent, moderate to severe without psychosis. (R. at 307.) He assessed Spears's then-current GAF score at 40.[6] (R. at 307.) On July 17, 2006, Spears reported that her overall mood was better since breaking up with her boyfriend. (R. at 351.) It was reported that Spears was

---

[4]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

[5]A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

[6]A GAF of 31-40 indicates "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 32.

Case 2:07-cv-00010-PMS   Document 15   Filed 01/02/08   Page 6 of 16   Pageid#: 92

making significant progress. (R. at 351.) The record shows that Spears continued counseling at Behavioral Health through July 17, 2006. (R. at 283-322, 342-52, 356-70.)

On July 2, 2004, Spears was seen at Stone Mountain Health Services with complaints of nervousness and irritation. (R. at 241-42.) She was diagnosed with anxiety, depression and postpartum depression. (R. at 242.) On September 3, 2004, Spears reported that she was doing better since taking Zoloft. (R. at 239.)

On October 19, 2004, Joseph Leizer, Ph.D., a state agency psychologist, completed a PRTF indicating that Spears suffered from an affective disorder and mental retardation. (R. at 249-65.) Leizer indicated that Spears had no limitation on her activities of daily living. (R. at 259.) He indicated that Spears had mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (R. at 259.) Leizer also indicated that Spears had not experienced any episodes of decompensation. (R. at 259.) Leizer reported that Spears was able to perform simple, unskilled work. (R. at 265.) This assessment was affirmed by Eugenie Hamilton, Ph.D., another state agency psychologist, on January 19, 2005. (R. at 249.)

That same day, Leizer also completed a mental assessment indicating that Spears was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to travel in unfamiliar places or use public transportation and to set realistic goals or make plans independently of others. (R. at 266-68.) Hamilton also affirmed this assessment on January 19, 2005. (R. at 268.)

On October 11, 2004, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, and Donna Abbott, M.A., a licensed senior psychological examiner, evaluated Spears at the request of Disability Determination Services. (R. at 243-48.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Spears obtained a verbal IQ score of 86, a performance IQ score of 79 and a full-scale IQ score of 81, which indicated that Spears was in the low average range of intellectual functioning. (R. at 246.) Lanthorn and Abbott diagnosed dysthymic disorder, early onset, and they ruled out a learning disability. (R. at 247.) Lanthorn and Abbott assessed a then-current GAF score of 60. (R. at 247.) Lanthorn and Abbott reported that Spears would most likely have difficulty with detailed or complex instructions. (R. at 247.) They reported that Spears could attend and concentrate and complete tasks without difficulty. (R. at 247.) Social interaction appeared to be adequate. (R. at 247.) Lanthorn and Abbott reported that Spears had significant limitations in her ability to adapt to change and to deal with stress. (R. at 247.)

On September 14, 2005, Lanthorn evaluated Spears at the request of Spears's attorney. (R. at 270-78.) The WAIS-III test was administered, and Spears obtained a verbal IQ score of 84, a performance IQ score of 72 and a full-scale IQ score of 76, which placed Spears in the borderline range of intellectual functioning. (R. at 271, 275.) Lanthorn diagnosed recurrent, severe major depressive disorder, generalized anxiety disorder and borderline intellectual functioning, and he ruled out a personality disorder, not otherwise specified. (R. at 277.) He assessed Spears's then-current GAF score at 55. (R. at 278.)

Lanthorn completed a mental assessment indicating that Spears had a limited, but satisfactory, ability to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 279-81.) He indicated that Spears was seriously limited, but not precluded, in her ability to follow work rules, to function independently, to maintain attention and concentration, to understand, remember and carry out detailed instructions and to behave in an emotionally stable manner. (R. at 279-80.) Lanthorn indicated that Spears had no useful ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to understand, remember and carry out complex instructions, to relate predictably in social situations and to demonstrate reliability. (R. at 279-80.)

On February 1, 2005, Spears was seen at Frontier Health for counseling. (R. at 195-96.) She was diagnosed with depressive disorder, not otherwise specified, and generalized anxiety disorder. (R. at 196.) It was reported that Spears had a then-current GAF score of 50. (R. at 196.)

On May 8, 2006, E. Hugh Tenison, Ph.D., a state agency psychologist, indicated that Spears suffered from an affective disorder, mental retardation and an anxiety-related disorder. (R. at 325-38.) Tenison indicated that Spears was mildly restricted in her activities of daily living. (R. at 335.) He indicated that Spears had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 335.) Tenison indicated that Spears had not experienced episodes of decompensation. (R. at 335.) Tenison reported that Spears had been noncompliant with treatment. (R. at 338.) He noted that given that Spears's mental status was described as fairly normal, there was no reason for her not to be compliant

because her judgment, reasoning and memory appeared to be little affected by her mental health. (R. at 338.)

That same day, Tenison completed a mental assessment indicating that Spears was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and to respond appropriately to changes in the work setting. (R. at 339-40.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2007); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review

does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2007).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated September 19, 2006, the ALJ denied Spears's claim. (R. at 14-21.) The ALJ found that the medical evidence established that Spears had severe impairments, namely borderline intellectual functioning, anxiety and depression, but he found that Spears did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19-20.) The ALJ found that Spears had the residual functional capacity to perform work at all exertional levels, but had mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (R. at 20, 259.) The ALJ found that Spears could return to her past relevant work as a cook and a waitress. (R. at 21.) Therefore, the ALJ concluded that Spears was not under a disability as defined in the Act, and that she was not eligible for SSI benefits. (R. at 21.) *See* 20 C.F.R. § 416.920(f) (2007).

In her brief, Spears argues that the ALJ erred by failing to clearly identify her severe impairments. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6.) Spears also argues that the ALJ erred by improperly determining her residual functional capacity. (Plaintiff's Brief at 7-10.) Spears further argues that the ALJ erred by failing to give full consideration to the findings of psychologist Lanthorn. (Plaintiff's Brief at 10-13.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

-12-

Spears argues that the ALJ erred by failing to clearly identify her severe impairments. (Plaintiff's Brief at 6.) Based on my review of the ALJ's decision, I find that this argument is without merit. While the ALJ failed to include borderline intellectual functioning as one of Spears's impairments in the findings section of his opinion, (R. at 20), he found that the medical evidence established that Spears's borderline intellectual functioning was severe in the body of his decision. (R. at 19.)

Spears also argues that the ALJ erred by improperly determining her residual functional capacity. (Plaintiff's Brief at 7-10.) The ALJ found in his September 2006 decision that Spears had the residual functional capacity to perform work at all exertional levels, but had mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (R. at 20, 259.)

Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding with regard to Spears's impairments related to her anxiety and depression. The record shows that when Spears was compliant with treatment, her symptoms of depression and anxiety were controlled with medication. (R. at 191-93, 239.) The medical expert testified at Spears's hearing that the record indicated that Spears benefitted significantly from treatment. (R. at 405.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

I further find that substantial evidence exists to support the ALJ's finding with regard to Spears's impairments related to her borderline intellectual functioning. As mentioned above, the ALJ found in both his decisions that Spears's borderline

intellectual functioning was severe. (R. at 19, 36.) In January 2006, the ALJ further found that Spears was limited to simple, unskilled work that did not require working with the public. (R. at 39.) In his September 2006 decision, the ALJ again imposed limitations with regard to Spears's borderline intellectual functioning. (R. at 14-21.) Specifically, the ALJ found that Spears retained the functional capacity to perform work at all exertional levels with the mental limitations imposed by psychologist Leizer. (R. at 20.) In a PRTF, Leizer found that Spears was mildly limited in maintaining social functioning and moderately limited in her ability to maintain concentration, persistence or pace. (R. at 259.) Leizer concluded that Spears was limited to the performance of simple, unskilled work. (R. at 265.) This finding is consistent with the other medical evidence contained in the record. Every psychological expert who offered an opinion on the issue found that Spears suffered limitations on her work capabilities as a result of her intellectual functioning. In October 2004, Lanthorn stated that Spears would have difficulty with detailed or complex instructions and had significant limitations in her ability to adapt to change and to deal with stress. (R. at 247.) In September 2005, Lanthorn stated that Spears had no useful ability to understand, remember and carry out complex instructions. (R. at 279-80.) In May 2006, Tenison also stated that Spears was moderately limited in her ability to understand, remember and carry out detailed instructions. (R. at 339-40.)

Based on this, I find that substantial evidence supports the ALJ's finding with regard to Spears's mental residual functional capacity.

Lastly, Spears argues that the ALJ erred by failing to give full consideration to the findings of psychologist Lanthorn. I disagree. Spears saw Lanthorn in October 2004,

-14-

at which time IQ testing placed her in the borderline range of intellectual functioning. (R. at 271, 275.) He diagnosed major depressive disorder, generalized anxiety disorder and borderline intellectual functioning, and he assessed Spears's then-current GAF score at 55, indicating moderate symptoms of difficulties. (R. at 278.) Lanthorn also found that Spears was seriously limited, but not precluded, in her ability to follow work rules, to function independently, to maintain attention and concentration, to understand, remember and carry out detailed instructions and to behave in an emotionally stable manner. (R. at 279-80.) Lanthorn further found that Spears had no useful ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to understand, remember and carry out complex instructions, to relate predictably in social situations and to demonstrate reliability. (R. at 279-80.) While the ALJ gave great weight to the opinion of the medical expert, he did not reject Lanthorn's opinion. (R. at 19.) Moreover, as previously discussed, the ALJ found that Spears retained the functional capacity to perform work at all exertional levels with the mental limitations found by Leizer. (R. at 20.) The mental limitations imposed by Leizer largely encompass those found by Lanthorn. Specifically, I find that the ALJ's limiting Spears to the performance of simple, unskilled work takes into account and is consistent with Lanthorn's findings.

### III. Conclusion

For the foregoing reasons, Spears's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

-15-

An appropriate order will be entered.

DATED: This 2nd day of January 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE